**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**


| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ELLIS WALKER | : | NO. 06-2265 |


## REPORT AND RECOMMENDATION

CAROL SANDRA MOORE WELLS                                    October 31, 2006
UNITED STATES MAGISTRATE JUDGE

Presently before this court is a *pro se* Petition for a Writ of Habeas Corpus, filed pursuant to 28 U.S.C. § 2241, by Ellis Walker ("Petitioner"). Petitioner seeks habeas relief on the ground that the United States Parole Commission violated governing Third Circuit precedent when it converted his parole term to a term of special parole on December 14, 2002 and has continued to violate Third Circuit precedent by subsequent imposition of special parole on him after he has violated parole. The Honorable Harvey Bartle, III referred this matter to the undersigned for preparation of a Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, it is recommended that Petitioner's habeas petition be PROVISIONALLY GRANTED.

### I.  BACKGROUND

On July 25, 1984, Petitioner was sentenced to a term of incarceration of six years, to be followed by a ten year term of special parole. Resp. at 1. His special parole term commenced on October 9, 1990 and was to expire on October 8, 2000. *Id.* at 2. On October 26, 1991, the United States Parole Commission ("the Commission") revoked his special parole, denied any credit for the time he spent on special parole ("street time"), and ordered that he serve 24 months before being re-

paroled. *Id.*  Petitioner was re-paroled to a special parole term, on April 26, 1993, and would remain under supervision until April 25, 2001. *Id.*  On August 17, 1993, the Commission issued an arrest warrant for Petitioner, which was executed on July 13, 1995. *Id.*  After a revocation hearing held on November 22, 1995, the Commission revoked his special parole, ordered that he receive no credit for his street time and ordered his re-parole after 16 months of incarceration. *Id.* at 2-3.

On October 24, 1996, the Commission informed Petitioner that, based on its interpretation of *Fowler v. United States Parole Commission*, 96 F.3d 835 (3d Cir. 1996), all his paroles after the initial revocation of his special parole term were to be considered periods of regular, not special, parole; hence, Petitioner's November 22, 1995 street time forfeiture should be voided and his mandatory release date re-calculated. *Id.* at 3.  Petitioner, re-paroled on November 12, 1996, was to remain under supervision until July 11, 2003. *Id.*  Petitioner was re-arrested on December 12, 1997. *Id.*  After a revocation hearing, on April 15, 1998, his parole was revoked, he was given credit for all street time, his re-parole was ordered after 24 months, and he was to remain under supervision until April 25, 2001. *Id.* at 3-4.  On December 12, 1999, Petitioner was released on parole.  Resp., Ex. 13.

On February 22, 2000, the Commission issued another arrest warrant, that was executed on August 30, 2002; Petitioner received a revocation hearing on November 25, 2002.  Resp. at 4.  On December 14, 2002, the Commission concluded that the Supreme Court's decision in *Johnson v. United States*, 529 U.S. 694 (2000), invalidated the Third Circuit's decision in *Fowler*; therefore, the Commission vacated its October 24, 1996 conversion of Petitioner's special parole term to regular parole and forfeited Petitioner's street time for periods from April 27, 1993 to July 12, 1995 and November 13, 1996 to December 11, 1997.  Resp., Ex. 16.  On December 16, 2002,  the

Commission revoked Petitioner's special parole term, ordered that he receive no credit for his street time and decided he would serve 14 months before re-parole.  Resp., Ex. 17.

Petitioner, re-paroled on October 30, 2003, was to remain under supervision until April 27, 2007.  Resp. at 5.  He was re-arrested on September 6, 2004 and, under an expedited revocation proposal pursuant to 29 C.F.R. § 2.66, he waived his right to a revocation hearing and received a proposed disposition of his case.  *Id.*  On November 15, 2004, the Commission ordered his special parole revoked, gave him no credit for street time and ordered his re-parole after 12 months.  *Id.* Petitioner was re-paroled on September 6, 2005 and was subject to supervision until March 4, 2008. *Id.* at 6.  Pursuant to a February 10, 2006 warrant, Petitioner was arrested on March 14, 2006.  *Id.* He subsequently received a revocation hearing and, on July 20, 2006, the Commission revoked his parole, ordered that he receive no credit for street time, and directed that he be re-paroled on November 14, 2006, after serving 8 months.  Resp., Ex. 25.

## II.  DISCUSSION

Petitioner argues that the Commission's decision to re-impose special parole on him after the initial revocation of his special parole violates *Fowler*, should be reversed, and his release date re-calculated, crediting his street time.  The government argues that the Commission's conclusion that *Johnson* invalidates *Fowler* is a reasonable one and this court should defer to it.  For the reasons which follow, the court concludes that it is bound by *Fowler*.

"Special" parole[1] is distinguishable from regular parole in three ways:  (1) special parole follows the term of incarceration, whereas regular parole involves release before the end of the defendant's ordered incarceration; (2) special parole is imposed and the length selected by the district

---

[1]The statute creating special parole, 21 U.S.C. § 841(c), repealed by the Comprehensive Crime Control Act of 1994, remains applicable to criminal offenses committed, as here, before November 1, 1987.  *Fowler*, 96 F.3d at 837 n.1.

court, rather than the Commission; and (3) when special parole is revoked, its full length becomes a term of incarceration, that is, street time does not count toward completion of special parole. *Fowler*, 96 F.3d at 840.  In *Fowler*, the Third Circuit concluded that, under the governing statute (former 21 U.S.C. § 841(c)), once special parole was revoked, no authority existed for the district court or the Commission to impose a new term of special parole; instead, upon revocation of special parole, any period of non-incarceration which was ordered had to be ordinary parole.  96 F.3d at 840. The court justified this result, in part, by analogizing to the statute governing supervised release, 18 U.S.C. § 3583(e)(3).  96 F.3d at 840.  Specifically, the court noted that both § 841(c) and § 3583(e)(3) provided for revocation of special parole (or supervised release) without providing for re-imposition of special parole (or supervised release) as part of the sanction for violation of special parole (or supervised release).  96 F.3d at 938, 940.  Since the court previously had concluded that, upon revocation of supervised release under § 3583(e)(3), the statute did not authorize a new term of supervised release, *see United States v. Malesic*, 18 F.3d 205 (3d Cir. 1994), it believed the same result should follow with respect to § 841(c).  *Fowler*, 96 F.3d at 838, 940.

In *Johnson*, the United States Supreme Court construed § 3583(e)(3) and concluded that, after a period of supervised release was revoked, the sentencing court retained implicit authority to re-impose a term of supervised release.  *Johnson*, 529 U.S. at 703-13.  First, the Court noted that § 3583(e)(1) indicated that, after the defendant served one year of supervised release, the district court had the authority to terminate his supervised release and discharge the defendant from custody.  *Id.* at 703-04.  By contrast, instead of using "terminate" in § 3583(e)(3), Congress used the term "revoke," thereby leaving open the possibility that the future supervised release was not precluded by a revocation of supervised release.  *Id.* at 705.  Second, the Court noted the secondary meaning

-4-

of "revoke," "to call or summon back," without the implication that future supervised release was impossible. *Id.* at 706. Third, the Court noted the dissent's argument that, once supervised release was revoked under § 3583(e)(3), the district court would be obligated to impose a new term of imprisonment under § 3583(a). 529 U.S. at 708. In that event, the Court believed the district court was free to set whatever sentence was authorized for the relevant offenses under the § 3583(a), which would include supervised release. 529 U.S. at 708. Fourth, the Court selected a construction of the statute it deemed consistent with the congressional policy providing supervised release to improve the likelihood of a successful transition from incarceration to freedom. *Id.* at 708-09. Consistent with this policy, Congress gave district judges discretion to allocate supervised release to those individuals who needed it most; forbidding the re-imposition of supervised release after revocation would contradict that scheme. *Id.* at 709. In addition, allowing for supervised release after revocation is consistent with the way the federal parole and probation systems were administered.[2] *Id.* at 710.

*Johnson* does undermine the Third Circuit's reliance upon § 3583(e)(3) in deciding that, after special parole is revoked, any future period of non-incarceration must be regular parole. However, there are reasons why this court should follow *Fowler*. First, as noted by Judges Fullam and Green of this court, until the Supreme Court or the Third Circuit expressly overrules *Fowler*, we are still bound by it. *Bardle v. United States*, Civ. A. No. 05-5279, 2006 WL 1071659, *1 (E.D. Pa. Apr. 20, 2006); *Marker v. Reilly*, Civ. A. No. 02-7702, 2004 WL 846699, *1 (E.D. Pa. Apr. 20, 2004). Second, *Johnson* does not mandate the conclusion that *Fowler* is no longer good law. The text of

---

[2]The Court also noted that the Commission had believed that special parole could be re-imposed after revocation of special parole but that courts had recently decided this was inconsistent with former 21 U.S.C. § 841(c). *Johnson*, 529 U.S. at 711 n.11. The Court believed this recent judicial development did not affect the backdrop against which Congress legislated when it enacted § 3583(e)(3) in 1984.

§ 841(c) is not identical to § 3583 and does not include the use of "terminate" to describe some actions and "revoke" to describe others. This is an important distinction, because Congress's use of "terminate" in § 3583(e)(1) as compared to the use of "revoke" in § 3583(e)(3) is what led the Supreme Court to utilize the secondary meaning of "revoke," thereby allowing for the re-imposition of supervised release post-revocation. *See Johnson*, 529 U.S. at 703-07. Absent a similar textual inconsistency, there is no reason to resort to revoke's secondary meaning; instead, its primary meaning of "to annul" should apply.

## III. CONCLUSION

The court concludes that *Fowler* must be followed in this circuit. Accordingly, after Petitioner violated his special parole the first time, all subsequent time he spent on parole was regular parole. Hence, Petitioner did not automatically forfeit his street time each time he violated regular parole and his release date must be re-calculated to determine a new maximum legal incarceration date. Therefore, I make the following:

## RECOMMENDATION

AND NOW, this 31st day of October, 2006, for the reasons contained in the preceding report, it is hereby RECOMMENDED that the Petition for a Writ of Habeas Corpus be CONDITIONALLY GRANTED. The matter should be REMANDED to the United States Parole Commission for further proceedings. The Commission shall re-calculate the date Petitioner should be released from all custody within sixth (60) days or Petitioner shall be released without further action of the court. It be so **ORDERED**.

*/s/ Carol Sandra Moore Wells*
CAROL SANDRA MOORE WELLS
UNITED STATES MAGISTRATE JUDGE

-6-